UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL GOMEZ, an individual,                      CASE NO:
JOSEPH LOWE, an individual,
IAN JOI, an individual, and
ALEJANDRO BAEZ and JOSEPHINE
CARTAGENA, as Co-Representatives
of the Estate of JAYDEN BAEZ,

      Plaintiffs,

vs.

SCOTT KOFFINAS, an individual,
RAMY YACOUB, an individual,
MARCO LOPEZ, in his official capacity
as Sheriff of Osceola County,

      Defendants.
_____/

## **COMPLAINT**

      COMES NOW, Plaintiffs, MICHAEL GOMEZ, JOSEPH LOWE, IAN JOI, and ALEJANDRO BAEZ and JOSEPHINE CARTAGENA, as Co-Representatives of the Estate of JAYDEN BAEZ, by and through their undersigned counsel, hereby file this Complaint against Defendants, SCOTT KOFFINAS (hereinafter "Koffinas"), RAMY YACOUB (hereinafter "Yacoub"), MARCO LOPEZ, in his official capacity as Sheriff of Osceola County (hereinafter "Defendant Lopez") and would show the following:

## JURISDICTIONAL  BASIS, VENUE, AND PARTIES

1.      This is an action for damages in excess of seventy-five thousand dollars ($75,000.00) exclusive of attorney's fees and costs.

2.      This Complaint seeks remedies pursuant to 42 U.S.C §§ 1983 and 1988, alleging violations of the Fourth Amendment of the Constitution of the United States of America, as well as remedies under the laws of the State of Florida.

3.      42 U.S.C. § 1983 provides in relevant part:

> Every person, who under the color of any statute, ordinance, regulation, custom or usage of any State or Territory . . . subjects, or causes to be subjected, any citizen or the United State or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress . . .

4.      Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391 because the acts giving rise to this Complaint occurred in Osceola County, Florida.

5.      This Court has jurisdiction to hear the federal civil rights violations in this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)-(4).

6.      Defendant Lopez was given timely written notice of this claim as required by *Fla. Stat*. § 768.28; however, said claims were not resolved within the period of time provided by the statute. Plaintiff has fully complied with §

768.28(6)(a), including providing timely notice and service to the Florida Department of Financial Services.

7.    All conditions precedent to the filing of this action have occurred, accrued, or have been waived as a matter of law.

8.    At all times material to this complaint, Plaintiffs Michael Gomez and Joseph Lowe were residents of Orange County, Florida.

9.    At all times material to this complaint, decedent Jayden Baez and Plaintiff Ian Joi were residents of Osceola County, Florida.

10.    Defendant Lopez is Sheriff of Osceola County and was a duly elected official, in charge of the Osceola County Sheriff's Office. Defendant Lopez is the current "constitutional officer" who employed and continues to employ Defendants Koffinas and Yacoub. Defendant Lopez, as Sheriff of Osceola County, serves as "the head of such [governmental] entity in . . . his official capacity . . ." Section 768.28(9)(a), *Fla. Stat*. That entity is organized under the laws of the State of Florida, with the capacity to be sued within the parameters of § 768.28(9)(a).

11.    Yacoub, upon information and belief, is a resident of Osceola County, Florida, and is *sui juris*. At all times material, Yacoub was acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or the Osceola County Sheriff's Office. Yacoub is sued in his individual capacity under federal law only.

12.    Koffinas, upon information and belief, is a resident of Osceola County, Florida, and is *sui juris*. At all times material, Koffinas was acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or the Osceola County Sheriff's Office. Koffinas is sued in his individual capacity under federal law only.

13.    Alejandro Baez and Josephine Cartagena were appointed as co-personal representatives of the Estate of Jayden Baez (hereinafter, "Co-Representatives"). A true and correct copy of the Order is attached hereto as **Exhibit "A**."

## FACTS COMMON TO ALL COUNTS

14.    Plaintiffs incorporate and re-allege all proceeding paragraphs, as though more fully pleaded herein, and further state as follows.

15.    On April 27, 2022, Jayden Baez was the driver of a black Audi sedan operated in the city of Kissimmee located in Osceola County, Florida. Michael Gomez, Joseph Lowe, and Ian Joi were passengers within the vehicle.

16.    Osceola County Law enforcement was conducting a training class on Dynamic Vehicle Takedowns for law enforcement in the parking lot of the Target store located at 4795 W. Irlo Bronson Parkway, Kissimmee, Florida 34746. The purpose of the class was to teach and to have the student law enforcement certified

in the technique. Osceola County Law enforcement observed the vehicle driven by Jayden Baez, park near the entrance to the Target store.

17.    Michael Gomez and Joseph Lowe exited the vehicle and entered the Target store. Jayden Baez and Ian Joi remained in the parked vehicle. At no point in time did law enforcement approach the vehicle to determine who was inside, nor did any law enforcement officer make contact with any of the Plaintiffs.

18.    Michael Gomez and Joseph Lowe were two young Hispanic males, each wearing a hoodie. Two (2) Osceola County law enforcement officers targeted Michael Gomez and Joseph Lowe and followed the pair into the Target store. A third law enforcement officer made contact with Target loss prevention personnel who observed Michael Gomez and Joseph Lowe via the store's video surveillance system in the loss prevention office. At no point in time within the store did Osceola County law enforcement officers or any member of Target's staff make contact with Michael Gomez or Joseph Lowe. At no point in time were any lawfully issued commands directed at Michael Gomez or Joseph Lowe. At no point in time were Michael Gomez or Joseph Lowe questioned. At no point in time did Michael Gomez or Joseph Lowe pose any risk or threat to law enforcement or the general public. Michael Gomez and Joseph Lowe were observed stealing Pokémon Cards and a pizza, with a combined value of less than Fifty Dollars ($50.00). This is a petit theft, in violation of F.S. 812.014. Since the value of the goods was under One-Hundred

Dollars ($100.00), the criminal penalty is the lowest penalty of any criminal offense in Florida, being punishable by a maximum of 60 days in the county jail and a Five-Hundred Dollar ($500.00) fine.

19.    Joseph Lowe exited Target, while being under the continued surveillance of Osceola County deputies.  Although witnesses to a crime, Osceola County deputies did not arrest Michael Gomez or Joseph Lowe, did not issue them a Notice to Appear, and did not stop them or instruct them to return the Pokémon cards and pizza.  Rather, the Osceola County Sheriff Office elected to continue their field training under the direction of supervising law enforcement by using Michael Gomez and Joseph Lowe as human guinea pigs for their training exercises.

20.    A supervising law enforcement officer radioed for other Osceola County law enforcement to "Gear up" in preparation for Michael Gomez and Joseph Lowe to reenter the vehicle.  The class, that was actively in session at the Target parking lot, intended to teach and certify law enforcement on how to conduct a vehicle take down.  The session was ended prematurely as the trainees were advised that a live takedown was going to occur so they could witness the practice, procedure, culture, and protocol of a Dynamic Vehicle Takedown.  Osceola County law enforcement positioned their unmarked vehicles to effectuate a Dynamic Vehicle Takedown.

21.    At least 30 law enforcement officers of Osceola County were involved in the response to the retail petit theft of a pizza and anime cards.

22.    Upon information and belief, an Osceola County Sheriff helicopter, known as Star 2, was called to the scene in response to the suspected petit retail theft of the pizza and anime cards. This excessive and unreasonable response illustrates the pervasive unconstitutional policies, culture, and procedures of the Osceola County Sheriff's Office.

23.    Joseph Lowe was observed by law enforcement leaving the Target store and returning to the Audi vehicle driven by Jayden Baez. Joseph Lowe entered the vehicle and sat in the front passenger seat, allegedly with a stolen pizza now in his possession. Within a few minutes, the Audi moved to a spot in the parking lot closer to the grocery section of the store where it backed into a parking spot.

24.    Minutes later, while the three occupants of the Audi remained in the vehicle, Michael Gomez was observed by Osceola County law enforcement leaving the Target store and returning to the Audi vehicle driven by Jayden Baez.  Michael Gomez entered through the rear driver's side, allegedly in possession of a stolen pack of Pokémon playing cards.

25.    Once Michael Gomez entered the Audi, Jayden Baez commenced driving as to exit and drive out. The Audi was occupied by the four young men.

26.     As Jayden Baez commenced driving, there were no marked law enforcement vehicles in proximity to him or within his line of vision.

27.     As Jayden Baez commenced driving, there were no law enforcement lights flashing in proximity to him or within his line of vision.

28.     As Jayden Baez commenced driving, there were no law enforcement sirens in proximity to him or within earshot range.

29.     The Audi vehicle was struck on the passenger side of the vehicle by an unmarked pick-up truck.  The detective driving the pick-up truck stated in his official report that he did not have his sirens activated.

30.     In a reaction to the ramming of this vehicle by an unmarked pick-up truck, Jayden Baez, whose vehicle was already in a forward motion, continued to move his vehicle forward through the opening in front of him when several additional unmarked vehicles belonging to the Osceola County Sheriff's Office, and driven by Osceola County deputy sheriffs and detectives, rammed the Audi from multiple sides.  All of this was part of the training exercise.

31.     Upon information and belief, Koffinas approached the vehicle from the rear and began firing multiple gun shots into the rear windshield of the Audi.

32.     Upon information and belief, Yacoub exited the unmarked pick-up truck and began firing into the front windshield of the Audi.

33.    The four young occupants of the Audi were helplessly caught in a crossfire, as Osceola County Sheriff's deputies continually and repeatedly discharged their weapons into the Audi from all angles.

34.    Jayden Baez was shot multiple times in the chest by Yacoub. Jayden Baez died from his wounds. He was 20 years old.

35.    As the shooting commenced, 19-year-old Joseph Lowe had both of his hands up in the air, indicative of a body signal representing "Stop", "Surrender", or "I do not have anything." Nevertheless, while his hands were up in the air over his torso, he was shot multiple times in both his hands by Yacoub. Joseph Lowe lost portions of his hands, including a finger.

36.    Michael Gomez, the 18-year-old back seat passenger, was shot multiple times in his back by Koffinas.  Michael Gomez survived the gunshots in his torso and retains the scars from the bullet strikes. A portion of a bullet remains lodged in Michael Gomez's shoulder.

37.    Upon extracting the vehicle occupants, Ian Joi, the 17-year-old who was seated in the rear passenger seat, had at all times complied with law enforcement and was not suspected of any alleged crime. Despite this, Ian Joi was not only exposed to live and potentially deadly gunfire, but also violently slammed to the ground by law enforcement, causing him to land face first into the pavement and suffer physical injuries.

38.    The Plaintiffs who survived the encounter have suffered serious physical injuries including permanent impairment, and have suffered great emotional and psychological trauma, humiliation, and distress.

39.    Michael Gomez was arrested on April 27, 2022, and subsequently charged with one count of Petit Theft First Offense case number 2022 MM 000955. The State filed a No Information and the case was administratively closed on July 14, 2022.

40.    Joseph Lowe was arrested on April 27, 2022, and subsequently charged with one count of Petit Theft First Offense case number 2022 MM 000955.  The State filed a No Information and the case was administratively closed on July 14, 2022.

41.    Ian Joi was not charged with any crime.

42.    Jayden Baez was killed on the scene.

43.    The force used by Osceola County law enforcement officers was gratuitous, excessive, and deadly. Widespread and persistent policy, practice, culture, and procedure of Osceola County Sheriff's Office allowed such a deadly and violent event to occur.

44.    Upon information and belief, Koffinas has been investigated for occasions of excessive force and despite having prior notice of the propensities of

Koffinas, Defendant Lopez took no steps to prevent Koffinas abuse of authority, or to discourage any excessive use of his authority.

45.     At all times material hereto, Defendant Lopez ratified an unwritten custom, persistent pattern, and/or practice of violating federally protected rights that has become so permanent and well-settled as to constitute official policy.

46.     This ratification has resulted in regular use of excessive force from Osceola County Sheriff's Office employees when responding to minor and non-violent crimes. Here, Osceola County Sheriff's Office employees unnecessarily and unreasonably escalated an alleged petit retail theft into a deadly firestorm.

47.     All members of the Osceola County Sheriff's Office failed to intervene to stop the use of Plaintiffs as practice subjects for training exercises.

48.     Upon information and belief, participants in the Dynamic Vehicle Takedown exercises were not certified in the technique but were nevertheless permitted to conduct said exercise. Allowing non-certified law enforcement officers to conduct training exercises on civilians was a perpetuation of Defendant Lopez ' deadly and unconstitutional policies, procedures and protocols.

49.     Defendant Lopez not only condoned, but encouraged the use of dynamic vehicle takedowns as a response to alleged petit theft occurring within a retail store as part of his "by any means necessary" law enforcement model.

50.    Pursuant to Osceola County Sheriff's Office Policy and Procedure 461.0, law enforcement implemented "Tactical Parking" and "Precision Immobilization Technique" (PIT) when attempting to apprehend the vehicle Plaintiffs occupied.

51.    Policy 461.0 provides that such procedures are justified when the "necessity of immediate apprehension . . . outweighs the danger created by the apprehension." The policy further provides that "[t]he use of PIT may only be used . . . [when a suspect commits or is suspected of committing] a *forcible felony* and whose escape would *create a substantial risk to the general public*."

52.    Here, not only was there no need for immediate apprehension of the Plaintiffs for an alleged petit theft, but law enforcement had several opportunities to apprehend the Plaintiffs without the implementation of Policy 461.0.

53.    Osceola County law enforcement officers were emboldened and encouraged to allow suspects of petit theft within a retail store to leave unchallenged and wait until they entered their vehicle before acting, thereby creating a fight or flight scenario, endangering Plaintiffs and the public at large.

54.    Defendant Lopez, Koffinas, Yacoub, and other law enforcement employed by Defendant Lopez created the supposed "exigency" which resulted in the death of Jayden Baez and injuries to Joseph Lowe, Ian Joi, and Michael Gomez.

55.     Defendant Lopez fosters an agency-wide culture of escalating minor criminal offenses into violent and deadly scenes. Upon information and belief, Sheriff Lopez and others within his department are being criminally investigated for its handling of this case. This culture has been continually displayed on Defendant Lopez' social media accounts, by his public comments, and by the violent policing culture that Defendant Lopez' practices, procedures, and protocols have created and perpetuated.

56.     Defendant Lopez has ratified policies and procedures that have resulted in deadly and excessive force being used regularly during law enforcement, regardless of the severity of suspected crime.

57.     Upon information and belief, Koffinas has been subject to prior complaints and/or discipline. Koffinas was not disciplined for his actions on April 27, 2022.

58.     Upon information and belief, Yacoub has been subject to prior complaints and/or discipline. Yacoub was not disciplined for his actions on April 27, 2022.

## COUNT I – DEFENDANT KOFFINAS' VIOLATION OF MICHAEL GOMEZ' CIVIL RIGHTS UNDER THE FOURTH AMENDMENT UNREASONABLE SEIZURE EXCESSIVE FORCE

59.     Michael Gomez repeats and realleges paragraphs 1 through 58 as though more fully set forth herein.

60.    Koffinas used objectively unreasonable force in the detention and arrest of Michael Gomez. The force used by Koffinas was unjustified, excessive, and deadly, and showed a reckless and callous disregard for the constitutional rights of Michael Gomez.

61.    The acts of Koffinas violated Michael Gomez' right to be free from an unreasonable seizure in violation of the Fourth Amendment, actionable under 42 U.S.C. § 1983.

62.    Koffinas was aware that Michael Gomez had allegedly committed the crime of Petit Theft, a second-degree misdemeanor, yet proceeded to pursue Michael Gomez with unreasonable, unnecessary, and deadly force.

**WHEREFORE**, Plaintiff, MICHAEL GOMEZ, demands a judgment against Defendant Koffinas for both compensatory and punitive damages, including costs of this action and attorney fees, and for such other relief as this Court deems just and proper.

## COUNT II – DEFENDANT KOFFINAS' VIOLATION OF JOSEPH LOWE'S CIVIL RIGHTS UNDER THE FOURTH AMENDMENT UNREASONABLE SEIZURE EXCESSIVE FORCE

63.    Joseph Lowe repeats and realleges paragraphs 1 through 58 as though more fully set forth herein.

64.    Koffinas used objectively unreasonable force in the detention and arrest of Joseph Lowe. The force used by Koffinas was unjustified, excessive, and deadly,

and showed a reckless and callous disregard for the constitutional rights of Joseph Lowe.

65.    The acts of Koffinas violated Joseph Lowe's right to be free from an unreasonable seizure in violation of the Fourth Amendment, actionable under 42 U.S.C. § 1983.

66.    Koffinas was aware that Joseph Lowe had allegedly committed the crime of Petit Theft, a second-degree misdemeanor, yet proceeded to pursue Joseph Lowe with unreasonable, unnecessary, and deadly force.

**WHEREFORE**, Plaintiff, JOSEPH LOWE, demands a judgment against Defendant Koffinas for both compensatory and punitive damages, including costs of this action and attorney fees, and for such other relief as this Court deems just and proper.

## COUNT III – DEFENDANT KOFFINAS' VIOLATION OF IAN JOI'S CIVIL RIGHTS UNDER THE FOURTH AMENDMENT UNREASONABLE SEIZURE EXCESSIVE FORCE

67.    Ian Joi repeats and realleges paragraphs 1 through 58 as though more fully set forth herein.

68.    Koffinas used objectively unreasonable force in the detention and arrest of Ian Joi. The force used by Koffinas was unjustified, excessive, and deadly, and showed a reckless and callous disregard for the constitutional rights of Ian Joi.

69.    The acts of Koffinas violated Ian Joi's right to be free from an unreasonable seizure in violation of the Fourth Amendment, actionable under 42 U.S.C. § 1983.

70.    Koffinas was aware that Ian Joi was involved in an alleged crime of Petit Theft, a second-degree misdemeanor, yet proceeded to pursue Ian Joi with unreasonable, unnecessary, and deadly force.

**WHEREFORE**, Plaintiff, IAN JOI, demands a judgment against Defendant Koffinas for both compensatory and punitive damages, including costs of this action and attorney fees, and for such other relief as this Court deems just and proper.

## COUNT IV – DEFENDANT YACOUB'S VIOLATION OF MICHAEL GOMEZ' CIVIL RIGHTS UNDER THE FOURTH AMENDMENT UNREASONABLE SEIZURE EXCESSIVE FORCE

71.    Michael Gomez repeats and realleges paragraphs 1 through 58 as though more fully set forth herein.

72.    Yacoub used objectively unreasonable force in the detention and arrest of Michael Gomez. The force used by Yacoub was unjustified, excessive, and deadly, and showed a reckless and callous disregard for the constitutional rights of Michael Gomez.

73.    The acts of Yacoub violated Michael Gomez' right to be free from an unreasonable seizure in violation of the Fourth Amendment, actionable under 42 U.S.C. § 1983.

74.     Yacoub was aware that Michael Gomez had allegedly committed the crime of Petit Theft, a second-degree misdemeanor, yet proceeded to pursue Michael Gomez with unreasonable, unnecessary, and deadly force.

**WHEREFORE**, Plaintiff, MICHAEL GOMEZ, demands a judgment against Defendant Yacoub for both compensatory and punitive damages, including costs of this action and attorney fees, and for such other relief as this Court deems just and proper.

## COUNT V – DEFENDANT YACOUB'S VIOLATION OF JOSEPH LOWE'S CIVIL RIGHTS UNDER THE FOURTH AMENDMENT UNREASONABLE SEIZURE EXCESSIVE FORCE

75.     Joseph Lowe repeats and realleges paragraphs one 1 through 58 as though more fully set forth herein.

76.     Yacoub used objectively unreasonable force in the detention and arrest of Joseph Lowe. The force used by Yacoub was unjustified, excessive, and deadly, and showed a reckless and callous disregard for the constitutional rights of Joseph Lowe.

77.     The acts of Yacoub violated Joseph Lowe's right to be free from an unreasonable seizure in violation of the Fourth Amendment, actionable under 42 U.S.C. § 1983.

78.     Yacoub was aware that Joseph Lowe had allegedly committed the crime of Petit Theft, a second-degree misdemeanor, yet proceeded to pursue Joseph Lowe with unreasonable, unnecessary force, and deadly force.

**WHEREFORE**, Plaintiff, JOSEPH LOWE, demands a judgment against Defendant Yacoub for both compensatory and punitive damages, including costs of this action and attorney fees, and for such other relief as this Court deems just and proper.

## COUNT VI – DEFENDANT YACOUB'S VIOLATION OF IAN JOI'S CIVIL RIGHTS UNDER THE FOURTH AMENDMENT UNREASONABLE SEIZURE EXCESSIVE FORCE

79.     Ian Joi repeats and realleges paragraphs 1 through 58 as though more fully set forth herein.

80.     Yacoub used objectively unreasonable force in the detention and arrest of Ian Joi. The force used by Yacoub was unjustified, excessive, and deadly, and showed a reckless and callous disregard for the constitutional rights of Ian Joi.

81.     The acts of Yacoub violated Ian Joi's right to be free from an unreasonable seizure in violation of the Fourth Amendment, actionable under 42 U.S.C. § 1983.

82.     Yacoub was aware that Ian Joi was involved in an alleged crime of Petit Theft, a second-degree misdemeanor, yet proceeded to pursue Ian Joi with unreasonable, unnecessary, and deadly force.

**WHEREFORE**, Plaintiff, IAN JOI, demands a judgment against Defendant Yacoub for both compensatory and punitive damages, including costs of this action and attorney fees, and for such other relief as this Court deems just and proper.

<u>**COUNT VII – DEFENDANT YACOUB'S VIOLATION OF JAYDEN BAEZ' CIVIL RIGHTS UNDER THE FOURTH AMENDMENT UNREASONABLE SEIZURE EXCESSIVE FORCE**</u>

83.     The Co-Representatives of the Estate of Jayden Baez repeat and reallege paragraphs 1 through 58 as though more fully set forth herein.

84.     Yacoub used objectively unreasonable force in the seizure of Jayden Baez. The force used by Yacoub was unjustified, excessive, and deadly, and showed a reckless and callous disregard for the constitutional rights of Jayden Baez.

85.     The acts of Yacoub violated Jayden Baez' right to be free from an unreasonable and fatal seizure in violation of the Fourth Amendment, actionable under 42 U.S.C. §§ 1983 and 1988.

86.     Yacoub was aware that Jayden Baez was involved in an alleged crime of Petit Theft, a second-degree misdemeanor, yet proceeded to pursue and execute him with unreasonable, unnecessary, and deadly force.

**WHEREFORE**, Plaintiffs, Alejandro Baez and Josephine Cartagena, as Co-Representatives of Jayden Baez, demand a judgment against Yacoub for both compensatory and punitive damages under 42 U.S.C. §§ 1983 and 1988, including

compensation for the deprivation of life, an award of costs of this action and attorney fees, and for such other relief as this Court deems just and proper.

### COUNT VIII – PLAINTIFFS' CONSOLIDATED CLAIMS AGAINST DEFENDANT LOPEZ, IN HIS CAPACITY AS SHERIFF OF OSCEOLA COUNTY, FOR LIABILITY UNDER 42 U.S.C § 1983

87.    All three individual Plaintiffs, Michael Gomez, Joseph Lowe, and Ian Joi, along with the Co-Representatives of the Estate of Jayden Baez, repeat and reallege paragraphs 1 through 86 as though more fully set forth herein.

88.    This is a cause of action for violation of civil rights under 42 U.S.C. §§ 1983 and 1988 against Defendant Lopez, in his official capacity as Sheriff of Osceola County, not predicated on vicarious liability, but instead independently predicated upon the affirmative ratification by Defendant Lopez, acting in his capacity as Sheriff, of the misconduct of Koffinas, Yacoub, and other law enforcement officers. None of these officers were disciplined or chastised by their Sheriff, and instead were supported and exonerated by Sheriff Lopez notwithstanding the misconduct alleged, even though such conduct resulted in death and/or permanent injury to Plaintiffs suspected of only petit theft, and who were not posing a threat of violence against known or unidentified law enforcement officers.

89.    Approximately one week following the events that resulted in the death of Baez and the permanent injury of Gomez, Lowe, and Joi, for allegedly committing a misdemeanor offense of petit theft, Defendant Lopez publicly ratified the actions

of his deputies. Despite the fact that there had been no internal investigation clearing the deputies or detectives of wrongdoing, this premature and full-throated ratification by Defendant Lopez, in his capacity as Sherriff, constitutes municipal or agency liability under the *Monell* doctrine. On May 4, 2022, Defendant Lopez stated to the media in a press conference: "I believe my deputies are justified in all their actions" and "I have the utmost, 200% trust in everything they do based on their training and their experience." This affirmative and unequivocal embrace by Defendant Lopez of the known and unconstitutional actions of his deputies constitutes ratification under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), for which the Sheriff, in his official capacity, is now legally responsible.

  **WHEREFORE**, all four (4) Plaintiffs, including the Co-Representatives of the Estate of decedent Baez, respectfully request entry of (4) four separate judgments against Defendant Lopez, in his official capacity as Sheriff, for compensatory damages under this Count, as suffered by each of the (4) four Plaintiffs, including costs of this action and an award of attorney fees, and for such other relief as this Court deems just and proper.

## COUNT IX – PLAINTIFFS' CONSOLIDATED
## CLAIMS AGAINST DEFENDANT LOPEZ, IN HIS CAPACITY AS
## SHERIFF OF OSCEOLA COUNTY, FOR LIABILITY UNDER
## §768.28(9)(a)

90.    All three individual Plaintiffs, Michael Gomez, Joseph Lowe and Ian Joi, along with the Co-Representatives of the Estate of Jayden Baez, repeat and reallege paragraphs 1through 58 as if more fully set forth herein.

91.    This is a cause of action under Florida's waiver of sovereign immunity statute, § 768.28, Fla. Stat., which provides specified and limited relief for torts committed by the state or any of its agencies or subdivisions, including elected county sheriffs, for injury or loss of property.

92.    Despite the intentional and unconstitutional conduct alleged in Counts I through VII, there is no allegation that the Defendant deputies "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property," as set forth in § 768.28(9)(a). Accordingly, the liability for their conduct, under Florida state law, falls on the state agency employer, Defendant Lopez, and not the state agency employees. The limited waiver of sovereign immunity set forth in § 768.28(9)(a) seeks to hold the agency employer liable and not the agency employee liable, except in instances of "actual malice."

93.    Current case law in the Circuit equates "bad faith with actual malice" which only applies when the conduct was committed with "ill will, hatred, spite, or an evil intent," a standard found by the United States Supreme Court to be even more

severe than "reckless or callous indifference" which alone is sufficient to support a claim for punitive damages under the common law. That same body of case law defines that "wanton and willful requirement" as describing conduct "much more reprehensible and unacceptable that mere intentional conduct."

94.    Accordingly, the allegations in Counts I through VII against Koffinas and Yacoub do not rise to that level of extreme malfeasance and present no inconsistency with the allegations in this Count, under § 768.28(9)(a), which impose liability strictly upon the state agency employer and not the state agency employees in the absence of any allegations of *actual malice*, meaning "ill will, hatred, spite, or an evil intent" on the part of said agency employees. Allegations of *actual malice* on the part of said agency employees, as that term has been defined, are not being made in any of the counts in this Complaint.

95.    At no time were Koffinas, Yacoub, or any other law enforcement officers chastised or punished by Defendant Lopez. Therefore, it would be inequitable, as well as factually unsupportable under this Complaint, for Defendant Lopez to contend that Koffinas, Yacoub, or any other law enforcement officers "acted in bad faith or with malicious purpose" so as to avoid agency liability under § 768.28(9)(a).

96.    Defendant Lopez willfully and consciously failed to discipline Koffinas and Yacoub, and therefore cannot escape state agency employer liability, which is the policy decision behind the legislative enactment of § 768.28(9)(a).

**WHEREFORE**, all (4) four Plaintiffs, including the Co-Representatives of the Estate of Jayden Baez, respectfully request entry of (4) four separate judgments against Defendant Lopez, in his official capacity as Sheriff, for compensatory damages as set forth in §768.28(5)(a), under this Count, as suffered by each of the (4) four Plaintiffs, including costs of this action, and for such other relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs request a trial by jury on all issues so triable.

**RESPECTFULLY** submitted this 20th day of September, 2023.

*[SIGNATURE BLOCK ON FOLLOWING PAGE]*

*/s/ Mark NeJame, Esquire*
Mark NeJame, Esquire
Florida Bar Number: 310931
Albert J. Yonfa, Esquire
Florida Bar Number: 65571
DeLayne Penland, Esquire
Florida Bar Number: 1024836
NEJAME LAW, P.A
189 South Orange Ave., Ste. 1800
Orlando, FL 32801
PH: (407) 500-0000
F:    (407) 802-1448
mark@nejamelaw.com
albert@nejamelaw.com
delayne@nejamelaw.com
PI@nejamelaw.com
Attorney(s) for Plaintiffs