UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL GOMEZ, an individual,
JOSEPH LOWE, an individual, IAN
JOI, an individual, and
ALEJANDRO BAEZ and JOSEPHINE
CARTAGENA, as Co-Representatives
Of the Estate of JAYDEN BAEZ,

      Plaintiffs,

v.                                       CASE NO.:  6:23-CV-1824-RBD-LHP

SCOTT KOFFINAS, an individual
RAMY YACOUB, an individual
MARCOS LOPEZ, in his official
capacity as Sheriff of Osceola County,

      Defendants.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MARCOS LOPEZ' MOTION FOR PROTECTIVE ORDER**

COMES NOW, Plaintiffs, by and through the undersigned counsel, and submits this Response in Opposition to Defendant Marcos Lopez', in his official capacity as Sheriff of Osceola County. In support Plaintiffs state as follows:

*[THIS SPACE INTENTIONALLY LEFT BLANK]*

# INTRODUCTION

Defendant Marcos Lopez, in his official capacity as Sheriff of Osceola County, Florida, seeks to unduly prohibit or restrict the deposition of Sheriff Marcos Lopez ("Sheriff Lopez") under the guise of protective order, arguing that subjecting Sheriff Lopez' to deposition is intended to annoy, embarrass, harass, and is otherwise unnecessary based on the Sheriff's lack of first hand knowledge of the incident, and other factors raised in his Motion. Defendant's Motion represents an attempt to withhold information critical to Plaintiffs' case. The testimony of Sheriff Lopez is highly relevant, proportional to the needs of the case, and not subject to any applicable privilege that would justify granting the requested protective order. In requesting his deposition, Plaintiffs' do not intend to harass, annoy, or unduly burden Sheriff Lopez.

# MEMORANDUM OF LAW

# LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(c), a party seeking a protective order must demonstrate "good cause" by showing that the requested discovery will result in annoyance, embarrassment, oppression, or undue burden or expense.

Notwithstanding his arguments related to "high-ranking officials" enjoying heightened protection from deposition, Sheriff Lopez has failed show good cause necessary to warrant the relief requested.

## ARGUMENT IN OPPOSITION

### I. Sheriff Lopez' testimony is highly relevant to Plaintiffs' claims.

**Personal and Unique Knowledge**

While Sheriff Lopez' Motion is replete with caselaw supporting his Florida Sheriff colleagues' successful avoidance of deposition testimony based primarily on lack of "unique personal knowledge," it fails to consider the glaring contrasts which serve to markedly distinguish the instant case from those cited. As Plaintiffs ascertain, Sheriff Lopez' primary argument in support of his preclusion from deposition rests on a lack of personal and unique knowledge. Plaintiffs do not allege that Sheriff Lopez was personally at the scene of the incident outlined in the operative complaint (Dkt. 32). Plaintiffs allege that Sheriff Lopez does, in fact, possess personal and unique knowledge related to the incident. This is evidenced by the Sheriff's own remarks following the incident.

As Sheriff Lopez outlined in his Motion, the incident subject to this litigation relates to an officer involved shooting which occurred on April 27, 2022. On April 28, 2022, Osceola County Sheriff's Office published a press release on its website

informing citizens that Sheriff Lopez requested the Florida Department of Law Enforcement commence an independent investigation into the incident[1]. That same day, during a one on one interview with a local news station, the reporter asked Sheriff Lopez "Can you say *at this point*[2] if you believe your deputies were justified?"[3] In response, Sheriff Lopez states quickly and confidently, "I believe my deputies are justified in all their actions."[4]

Sheriff Lopez' made these public statements less than 24 hours after the incident; on the same day Osceola County Sheriff's Office published its press release characterizing the investigation as "active and ongoing;" and the day after a petit theft apprehension left a young man dead and three others significantly injured at the hands of his deputies. Moreover, Sheriff Lopez' statements were made almost two weeks prior to co-Defendants Ramy Yacoub and Scott Koffinas providing their statements to FDLE for the "open and active" investigation.[5]

Consequently, Sheriff Lopez must possess some level of personal and unique knowledge of the incident which allowed him to make a conclusory finding of

---

[1] Osceola County Sheriff's Office, Deputy Involved Shooting, Press Release, https://www.osceolasheriff.org/deputy-involved-shooting/ (last accessed February 20, 2025)

[2] While speculative, the reporter using the language "at this point" shows an understanding from experience that these type questions generally cannot be answered so soon following the incident.

[3] Fox 35 Orlando, Osceola sheriff discusses Kissimmee Target shooting, https://www.fox35orlando.com/video/1063257 (last accessed February 20, 2025)

[4] *Id*.

[5] On May 10, 2022, co-Defendants Ramy Yacoub and Scott Koffinas made statements to Special Agent Silberstein of FDLE.

4

exoneration to the public, in his official capacity as Sheriff, just day after the incident.

**Affirmative Ratification**

The Supreme Court has long recognized that widespread practices can be shown through unwritten policy "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S. H. Kress & Co.,* 398 U.S. 144 (1970). Plaintiffs' First Amended Complaint (Dkt. 32) alleges widespread and persistent policy, practice, and culture, allows deadly, violent, and unconstitutional incidents to occur under the supervision and through the affirmative ratification of Sheriff Lopez, in his official capacity.

In support of his Motion, Sheriff Lopez' cites to *Slone v. Judd*, No. 8:09-CV-1175-T-27TGW, 2011 WL 1584421 (M.D. Fla. April 26, 2011). Specifically, Sheriff Lopez cites to plaintiff's earlier filed deposition request, which was denied because "there were other supervisors and administrators . . . who were more knowledgeable" and "[the Sheriff] may not be called to testify about his reasons for taking official actions 'absent extraordinary circumstances.'" (Dkt. 43 at 5).

Here, extraordinary circumstances exist to which only Sheriff Lopez can testify. The ease with which he publicly exonerated his deputies, before an investigation, and despite the horrific nature of the incident, displays an indifference to the severity of the events of April 27, 2022. It can be reasonably deduced from

there that this conduct, and similar mindset, is pervasive and widespread throughout the department. Sheriff Lopez, as the "captain of the ship" creates the culture to which his subordinates adhere.

Sheriff Lopez' is an essential player in Plaintiffs' claims related to ratification, and his deposition testimony is necessary and inquiry is warranted.

**Sheriff Lopez' Affidavit**

In Sheriff Lopez' supporting affidavit, he states that he has no unique personal knowledge of the incident. He goes on to state that "all information [he has] as to what occurred during the incident was learned through post-incident investigations and reports of others to [him], including the FDLE and Sheriff's Office investigations after the incident occurred."

The claims in Sheriff Lopez' affidavit, dated February 6, 2025, appear to be contradictory to his public exoneration of his deputies made on April 28, 2022. Without independent knowledge of the incident, Sheriff Lopez baselessly expressed to the community that his deputies were justified in their use of force. Special Agent Silberstein's FDLE report was signed and completed on September 14, 2022, nearly 5 months after Sheriff Lopez' public exoneration. Sheriff Lopez' brazen conduct exhibits a deliberate indifference to discipline and accountability, which warrants further inquiry by way of deposition.

In the alternative, Sheriff Lopez' April 28, 2022 public exoneration of his deputies was based on personal and unique knowledge, as outlined earlier in this response, and as such he is not immune from deposition.

## II.   Conclusion

Sheriff Lopez is an elected official with a duty to serve his constituents. With that comes a further duty to ensure that unconstitutional conduct of subordinates is not condoned, so the community can rest assured their constitutional rights will not be violated by those who are charged to protect and serve them.

Based on the foregoing, sufficient grounds exists to warrant deposition inquiry into the policy, custom, and culture created by Sheriff Lopez directly, and as such, Sheriff Lopez' Motion for Protective Order should be denied.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of February, 2025, a copy of the foregoing is being served via electronic mail to the following: Thomas W. Poulton, Esquire (poulton@debevoisepoulton.com), Jeffrey K. Grant, Esquire (grant@debevoisepoulton.com), DeBEVOISE & POULTON, P.A., 1035 S. Semoran Boulevard, Suite 1010, Winter Park, Florida 32792.

*/s/ DeLayne D. Penland*
DeLayne Penland, Esquire
Florida Bar Number: 1024836
Mark E. NeJame, Esquire
Florida Bar Number: 310931
Stephen J Calvacca, Esquire
Florida Bar Number: 561495
STEPHEN J. CALVACCA, P.A.
*Of Counsel to NeJame Law, P.A.*
NEJAME LAW, P.A
111 N. Orange Ave., Ste. 1300
Orlando, FL 32801
PH: (407) 500-0000
F: (407) 802-1448
mark@nejamelaw.com
delayne@nejamelaw.com
PI@nejamelaw.com
*Attorney(s) for Plaintiffs*