UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL GOMEZ; IAN JOI; and JOSEPH LOWE,

    Plaintiffs,

vs.

SCOTT KOFFINAS; RAMY YACOUB; and CHRIS A. BLACKMON,

    Defendants.

Case No. 6:23-cv-1824-GAP-RMN

## ORDER

This matter is before the Court on Defendants' Motion for Order Permitting Limited Disclosure of State Grand Jury Considerations. Dkt. 55. The Motion has been referred to a magistrate judge for adjudication. Given the requested relief, I granted the State Attorney for the Ninth Judicial Circuit leave to file a response to the motion and argue at the hearing on the motion, which was held on May 6, 2025. *See* Dkts. 67 (endorsed order), 68 (State Attorney's response), 72 (hearing minutes). Plaintiffs did not file a written response to the motion but presented argument in opposition at the hearing. Dkt. 72 (hearing minutes). All parties were given leave to file

supplemental briefs in support of their arguments. *Id.* Only the Defendants did so. Dkt. 76

After carefully considering the arguments presented by the Defendants, Plaintiffs, and State Attorney, I conclude the motion should be denied without prejudice.

## I. BACKGROUND[1]

In the early evening of April 22, 2023, officers from the Osceola Sheriff's Office were training in a Target store parking lot in Kissimmee, Florida. One officer observed a vehicle with a covered license plate. Two men wearing facemasks and hoodies emerged from the car and entered the store.

Suspecting the men were about to commit a robbery, the officer alerted his colleagues, one of whom notified Target's loss prevention department. Using surveillance cameras, store employees observed the men and advised the Osceola Sheriff's Office that the men may have shoplifted a slice of pizza and a pack of Pokémon cards.

One of the men exited the store first, returning to the car. The car then relocated to a handicapped parking space closer to the door. Soon after, the second man exited and returned to the car.

---

[1] The Background section of this order is a summary of the factual allegations asserted in the Amended Complaint and its attachment. *See* Dkt. 32.

Using four unmarked police cars, the officers then tried to execute a maneuver called vehicle block. One officer exited his vehicle during or just afterward. The officers left enough space between the vehicles for the driver, Jayden Baez, to move the blocked car. And that is what happened.

Once the car began to move, two officers unholstered and discharged their firearms. Mr. Baez was killed. Two passengers, Joseph Lowe and Michael Gomez, were shot multiple times but survived. A third passenger, Ian Joi, was missed in the barrage.

Later, a state grand jury heard testimony and considered evidence about the April 22 shooting. The grand jury declined to return any indictments, stating that "the evidence shows . . . the deputies' actions . . . did not rise to the level of criminal charges." Dkt. 32-1 at 1. Instead, the grand jury issued a public report, which is attached to the amended complaint. *Id.*

Defendants move for an order permitting them to offer evidence of the grand jury "considerations," Dkt. 55, or more precisely, testimony about what the grand jury did not consider, Dkt. 76 at 2. According to the Defendants, they would like to ask a witness, who was formerly employed as an Assistant State Attorney, *see* Dkt. 58 at 2, eight questions about the grand jury proceedings:

1. Was the grand jury told of or otherwise informed of the firearm that was in the Audi?

2. Was the grand jury told of or otherwise informed of the firearm which fell from Jayden Baez as he was pulled from the vehicle after the incident?
3. Was the grand jury told of or otherwise informed of the bags of marijuana that were found in the Audi after the incident?
4. Was the grand jury told of or otherwise informed of the multiple identification cards, drivers licenses, and debit cards of persons other than the occupants of the Audi, which were found in the Audi after the incident?
5. Was the grand jury told of or otherwise informed of the downloads made from the Audi occupants' cell phones, including images or video showing Baez with the firearm which was found at the scene after the incident?
6. Was the grand jury told of or otherwise informed of the downloads made from the Audi occupants' cell phones, including images or video showing Lowe asking people on social media or by text to set up or allow their bank accounts be [sic] used by Lowe and/or Baez to commit bank fraud?
7. Was the grand jury told of or otherwise informed of the plan by the Audi occupants to rob a jewelry store, on the day of the incident, but which was not carried out?
8. As the presenter of the case to the grand jury, what is the legal standard the grand jury was given to criticize and make judgments about the

> Sheriff's Office's policies or procedures at issue during the incident?

Dkt. 76 at 6–7. The motion is ripe for consideration.

## II.   ANALYSIS

To address the Defendants' request, the Court must determine first if state law or federal law applies. Next, the Court must identify the applicable legal standards. Then, the Court must apply these standards to the circumstances in this case.

### A.   Does State Or Federal Law Apply?

The Court must first determine what law applies to the Defendants' request. The request implicates a privilege that attaches to state grand jury proceedings. "Evidentiary privileges in federal courts are governed by Federal Rule of Evidence 501." *ACLU of Miss. v. Finch*, 638 F.2d 1336, 1342 (5th Cir. 1981).[2] That rule provides that, unless "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision" in civil cases, the "common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege." *See* Fed. R. Evid. 501.

---

[2] Decisions of the former Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

All nine of Plaintiffs' claims in the amended complaint are brought under 42 U.S.C. § 1983. *See* Dkt. 32 ¶¶ 61–98 (Counts I through IX). Federal common law therefore applies to Defendants' request.³ *Finch*, 638 F.2d at 1342 (applying federal common law in a civil case involving section 1983 claims). For this reason, the state law shielding the disclosure of grand jury materials is not controlling on this Court. *See Socialist Workers Party v. Grubisic*, 619 F.2d 641, 643 (7th Cir. 1980); *see also U.S. ex rel. Woodard v. Tynan*, 757 F.2d 1085, 1089 (10th Cir. 1985); *Heeter v. Bowers*, No. 2:20-cv-6481, 2025 WL 511281, at *6 (S.D. Ohio Feb. 17, 2025); *United States v. Mathes*, No. 2:88-cv-116, 1992 WL 161050, at *3 (M.D. Fla. Jun. 22, 1992) (same).⁴

---

³ Even if a state-law claim remained pending, it would be immaterial to the choice-of-law analysis because "the federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, even if the [evidence] is relevant to a pendent state law count which may be controlled by a contrary state law of privilege." *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992); *see also Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014) (same); *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir. 1982) (same).

⁴ Westlaw reports the incorrect caption and case number for *Mathes*. According to this Court's records, the June 22, 1992 decision was rendered in the case identified in this Order.

### B. Does Federal Common Law Recognize The Secrecy Of State Grand Jury Materials?

Because the State Attorney has appeared and objected to the requested disclosure,[5] the Court must consider whether federal common law, as interpreted in light of reason and experience, provides a privilege to the records of state grand jury proceedings. I conclude it does.

Federal courts confronted with this question generally conclude that principles of federalism, comity, and full faith and credit require affording a qualified privilege under federal common law to state grand jury materials. The Fourth Circuit's decision in *United States v. Silva*, 745 F.2d 840 (4th Cir. 1984), is illustrative. There, a convicted murderer who escaped from a Florida prison was arrested in South Carolina while meeting with Mr. Silva, who was charged and convicted of two federal crimes. *Id.* at 843.

Before his trial in federal court in South Carolina, Mr. Silva subpoenaed materials from a Florida grand jury to use to impeach the testimony of a prosecution witness. *Id.* at 844–45. At trial, the district court briefly reviewed the transcript of the Florida grand jury proceedings *in camera*, finding substantially no conflict between the trial testimony and the grand jury testimony. *Id.* at 845. On appeal,

---

[5] Only the affected government official may claim the asserted privilege. *Carr v. Monroe Mfg. Co.*, 431 F.2d 384, 387 (5th Cir. 1970) (citing *United States v. Reynolds*, 345 U.S. 1, 7 (1953)).

Mr. Silva argued the trial court should have reviewed the grand jury transcript more thoroughly and permitted him to recall and impeach the prosecution's witness. *Id.*

The Fourth Circuit affirmed, concluding that it was "bound by principles of comity to accord state grand jury proceedings at least a qualified privilege." *Silva*, 745 F.2d at 845 (citing *Grubisic*, 619 F.2d at 644). The court reasoned that the standard that applies to federal grand jury materials also applies to state grand jury materials. *Id.* Turning to Federal Rule of Criminal Procedure 6(e), the court noted that rule requires litigants who seek federal grand jury transcripts to show (1) the material they seek is needed to avoid a possible injustice in another proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) the request is structured to cover only needed material. *Id.* (quoting *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211 (1979)). Considering these factors, the Fourth Circuit held that the district court did not error when it "refused to order the production of the transcript of the Florida proceeding." *Id.* at 846–47.

The Seventh Circuit has held similarly. *See Grubisic*, 619 F.2d at 643–45. In *Grubisic*, as here, a state grand jury issued a report. *Id.* at 642. The plaintiffs, who had filed a civil rights action, subpoenaed the grand jury records and transcripts from the state attorney. *Id.* The

district court ordered the state attorney to produce the materials, and the state attorney sought appellate review of that order. *Id.*

On appeal, the Seventh Circuit reversed, reasoning that the district court did not apply the correct standard. *Grubisic*, 619 F.2d at 645. The court stressed first that federal common law, not state law, is the source of any privilege for state grand jury materials. *Id.* at 643. The court then reasoned that a "strong policy of comity . . . impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Id.* (quoting *Lora v. Bd. of Educ.*, 74 F.R.D. 565, 576 (E.D.N.Y. 1977)). After carefully considering the role that grand jury secrecy plays in the state criminal justice system, the court concluded that federal common law afforded a privilege to state grand jury materials, the scope of which was defined by the test set forth in Federal Rule of Criminal Procedure 6(c). *Id.* at 643–44.

The Seventh Circuit reasoned further, however, that principles of comity generally require litigants to first direct their requests for grand jury disclosure "to the court that supervised the grand jury's activities." *Grubisic*, 619 F.2d at 644. That is generally required, according to the court, because the "supervisory court has first-hand knowledge of the need for secrecy in those particular proceedings." *Id.* But the court also reasoned "comity dictates that the federal courts defer action on any disclosure requests until the party seeking disclosure

shows that the state supervisory court has considered his request and has ruled on the continuing need for secrecy." *Id.* This is so because "[o]therwise the potential threat of disclosure orders in subsequent federal civil litigation would seriously weaken the state court's control over the secrecy of this essential component of its criminal justice system." *Id.* (citing *Lora*, 74 F.R.D. at 576).[6]

Likewise, in *Camiolo v. State Farm Fire and Casualty Company*, 334 F.3d 345, 357 (3d Cir. 2003), the Third Circuit also relied on the "'elementary principles of federalism and comity' [that] are 'embodied in the full faith and credit statute'" to hold that litigants should first use the mechanisms provided by state law to seek the disclosure of grand jury materials. In support, the court cited several district court decisions that came to the same conclusion. *See id.* at 358 (collecting cases). The court then adopted the same standard applied by the Fourth Circuit in *Silva* and the Seventh Circuit in *Grubisic*. *Id.*

---

[6] The Seventh Circuit explained that such deference "does not give the state courts a veto over disclosure in this federal civil rights case." *Grubisic*, 619 F.2d at 644. A state court's determination of whether materials should be disclosed under state law is a preliminary step. *Id.* Only a "federal court may determine whether the materials are privileged under federal common law." *Id.*; *see also Am. Tank Transp., Inc. v. First People's Cmty. Fed. Credit Union*, 86 F.3d 1148 (4th Cir. 1996) (unpublished table decision).

For the reasons given by the Third, Fourth, and Seventh Circuits, I conclude that federal common law controls the Defendants' request. Consistent with the requirements imposed by the Eleventh Circuit on the disclosure of federal grand jury materials, *see United States v. Aisenberg*, 358 F.3d 1327, 1348 (11th Cir. 2004), the Defendants must satisfy the requirements of Federal Rule of Criminal Procedure 6(e). That is, they must establish that (1) the materials they seek are needed to avoid a possible injustice, (2) the need for disclosure of the state grand jury materials is greater than the need for continued secrecy, and (3) their request is structured to cover only material required to ameliorate the possible injustice. I also conclude that the weight of authority and principles of federalism and comity require the Defendants to first ask the state court that supervised the grand jury to authorize the disclosure.[7]

---

[7] Defendants point to only one federal decision in which the court, in the first instance, considered releasing state grand jury materials by applying the Florida grand jury secrecy statute. Dkts. 55 at 2 (relying on *Whittier v. City of Sunrise*, No. 0:07-cv-60476, 2007 WL 9706152 (S.D. Fla. Aug. 22, 2007)), 76 at 3 (same). That decision did not undertake a choice-of-law analysis or consider the request under federal common law, which I conclude controls here.

After the close of briefing, the Southern District of Florida considered a similar request for disclosure of grand jury materials in another case. *See Gilbane Bldg. Co. v. Sch. Bd. of Broward Cnty.*, No. 0:24-cv-62238, 2025 WL 1591228, at *1 (S.D. Fla. June 5, 2025). There, a magistrate judge declined to release materials from a statewide

C.  Should The Court Permit Defendants To Elicit Testimony About The State Grand Jury Considerations?

As explained above, the threshold step in answering this question is whether the Defendants have complied with "elementary principles of federalism and comity," *Camiolo*, 334 F.3d at 354, which "demand that a district court presented with a request to compel the disclosure of any matter occurring before a [state] investigating grand jury should direct the party to first formally petition the judicial officer who possesses the supervisory authority to grant or deny such access," *id.* at 357. Directing such requests to the supervising state court ensures "the potential threat of disclosure orders in subsequent federal civil litigation [does not] seriously weaken the state court's control over the secrecy of [an] essential component of its criminal justice system." *Grubisic*, 619 F.2d at 644; *see also Camiolo*, 334 F.3d at 358 (quoting the same passage from *Grubisic*).

Here, the Defendants have not sought relief from the state court that supervised the grand jury. They assert that they are not seeking the disclosure of evidence or testimony considered by the grand jury, explaining that they intend to call as a witness an attorney formerly

---

grand jury, holding that the movant did not satisfy the requirements for disclosure under state or federal law. *Id.* at *4. Because it is unclear if that court was proceeding under its federal question or diversity jurisdiction, *see id.* at *1–4, it is also unclear what law provided the rules of decision in that case, *see* Fed. R. Evid. 501.

employed by the State Attorney's Office to testify about evidence that was not presented to the grand jury. I am not persuaded that such circumlocutions are materially different from a direct request for transcripts of the grand jury testimony. The supervising state court may have a different view. And principles of comity and federalism counsel that the state court should have the first say.[8]

Furthermore, given the significance of the grand jury investigation here and its report, the supervising state court may choose to permit the disclosure under Florida law. *See* Fla. Stat. § 905.27(1)(c). If that occurred, then a determination whether the testimony should be permitted under federal law despite Florida's long-standing prohibition on the disclosure of grand jury matters would be unnecessary.

---

[8] The Court need not address whether comity imposes a requirement or simply clarifies a preferred practice. *See, e.g., Heeter*, 2025 WL 511281, at *5 (collecting cases discussing whether directing such requests to state courts is a requirement or practice). To be sure, several district courts have deemed it unnecessary in federal section 1983 cases. *Id.* (collecting cases). But when discussing the disclosure of federal grand jury materials, the Supreme Court has also cautioned that, "in general, requests for disclosure of grand jury transcripts should be directed to the court that supervised the grand jury's activities." *Douglas Oil Co.*, 441 U.S. at 226. All-in-all, directing the Defendants to present their request first to the state supervising court is, at the very least, a prudent measure.

A state court decision to release the information sought would also relieve this Court from addressing a serious issue of statutory construction lurking in the state statute that Defendants ask the Court to use to authorize the disclosure. *See* Dkt. 54 at 1 (seeking disclosure under Florida law). Section 905.27 of the Florida Statutes ambiguously refers to "[w]hen a court orders" a disclosure. Fla. Stat. § 905.27(2)(a)–(c). On the one hand, a natural reading of that language—which is found in a state statute regulating the secrecy of state grand jury proceedings—might reasonably limit the term "court" to mean "state courts." *See, e.g., Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022) (the language used in statutes should be given its ordinary, contemporary, common meaning, and read in context). On the other hand, the language used might also be reasonably interpreted as broadly authorizing any court to order the disclosure of Florida grand jury materials. *See Gilbane Bldg. Co.*, 2025 WL 1591228, at *3 (interpreting, in dicta, references to "a court" in section 905.27 to embrace federal courts).[9] A prudent alternative to diving into this

---

[9] Florida law does not appear to shed too much light on the meaning of "court" in this statute. The term is not defined in chapter 905 of the Florida Statutes. But Florida law vests jurisdiction over criminal proceedings in the state's circuit and county courts. Fla. Stat. § 900.03(1).

And a broad reading of the statute could lead to anomalous results. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("It is true that interpretations of a statute which would produce

interpretative question is to simply require the Defendants to direct their request to a state court in the first instance, according to "elementary principles of federalism and comity." *Camiolo*, 334 F.3d at 354

Given the procedural status of this case, the Defendants have sufficient time to ask the state court that supervised the grand jury whether the testimony they seek can and should be permitted under Florida law. For these reasons, the Motion should be denied without prejudice.

## III.  CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion for Order Permitting Disclosure of State Grand Jury Considerations (Dkt. 55) is **DENIED without prejudice**.

**DONE** and **ORDERED** in Orlando, Florida, on September 19, 2025.

_____
ROBERT M. NORWAY
*United States Magistrate Judge*

---

absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.") Consider, for instance, if Florida lawmakers intended to authorize a local municipal court in Portland, Oregon, or the Courts of First Instance in the Emirate of Dubai to determine if sensitive testimony presented to a Florida grand jury should be disclosed.

Copies to:

Counsel of Record